UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EMILY JESSICA BONILLA,<br><br>        Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL,<br>  Commissioner of Social Security,<br><br>        Defendant. | CIVIL ACTION NO. 3:20-CV-00161<br><br>(MEHALCHICK, M.J.) |

### MEMORANDUM

Plaintiff Emily Jessica Bonilla ("Bonilla") brings this action under section 1631(c) of the Social Security Act, 42 U.S.C. § 1383(c) for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act. For the following reasons, the undersigned shall order the Commissioner's decision be **REVERSED** and this matter **REMANDED.**

I.    **BACKGROUND AND PROCEDURAL HISTORY**

In September 2015, Bonilla filed an application under Title XVI for supplemental security income benefits, claiming disability beginning August 20, 2015, due to a mild stroke and left side issues. (Doc. 5-6, at 2). The Social Security Administration initially denied the application in March 2016, prompting Bonilla's request for a hearing, which Administrative Law Judge (ALJ) Theodore Burock held on November 8, 2017, as well as on August 23, 2018. (Doc. 5-6, at 16; Doc. 5-5, at 29, 60). In a December 2018 written decision, the ALJ determined that Bonilla is not disabled and therefore not entitled to benefits or income under Title XVI. (Doc. 5-2, at 22). The Appeals Council subsequently denied Bonilla's request for

review. (Doc. 5-2, at 2).

On January 30, 2020, Bonilla commenced the instant action. (Doc. 1). The Commissioner responded on April 6, 2020, providing the requisite transcripts from Bonilla's disability proceedings. (Doc. 4; Doc. 5). The parties then filed their respective briefs, with Bonilla raising three principal bases for reversal or remand. (Doc. 14; Doc. 15).

**II.   STANDARDS OF REVIEW**

To receive benefits under XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.909. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).[1]

A.   ADMINISTRATIVE REVIEW

The "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 416.912(a)(1). Thus, if the claimant establishes an inability to do past

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 416.912(a)(1).

  B. JUDICIAL REVIEW

The Court's review of a determination denying an application for Title XVI benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Bonilla is disabled, but whether the Commissioner's determination that Bonilla is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11,

2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

### III. THE ALJ'S DECISION

In his written decision, the ALJ determined that Bonilla "has not been under a disability, as defined in the Social Security Act, since September 15, 2015, the date the application was filed." (Doc. 5-2, at 22). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. § 416.920(a).

#### A. STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If a claimant is engaging in substantial gainful activity, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. § 416.920(b). Substantial gainful activity is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 416.972. The ALJ must consider only the earnings of the claimant. 20 C.F.R. § 416.974. Here, the ALJ determined that Bonilla "has not continuously engaged in substantial gainful activity since September 15, 2015, the application date," and therefore proceeded to

4

step two of the analysis. (Doc. 5-2, at 13-14).

    B.    STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment – or a combination of impairments – that is severe and meets the 12-month duration requirement. 20 C.F.R. § 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an impairment or combination of impairments that significantly limits the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 416.920(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to consider step three. Here, the ALJ found that Bonilla had seven severe impairments: migraine headaches, status post cerebrovascular accident, depression, anxiety, recurrent lymphadenopathy, locked right knee, and seizure disorder. (Doc. 5-2, at 14).

    C.    STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. I, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. § 416.920(a)(4)(iii), 416.925, 416.926. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairment or impairments meet a listing, then the claimant is considered disabled, otherwise the ALJ must proceed to and analyze the fourth step of the sequential analysis. 20 C.F.R. § 416.920(d). Here, the ALJ determined that none of Bonilla's impairments, considered individually or in combination, meets or equals the severity of a listed impairment. (Doc. 5-2, at 14-16).

    D.    RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity (RFC), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 416.929(b)–(c).

Here, Bonilla alleged that her medical impairments affected her sleep, memory, concentration, understanding, and her abilities to lift, squat, bend, stand, walk, hear, climb stairs, see, complete tasks, follow instructions, use her hands, and get along with others. (Doc. 5-2, at 17). The ALJ found that while Bonilla's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 5-2, at 17). The ALJ concluded that Bonilla had the RFC "to perform sedentary work as defined in 20 C.F.R. § 416.967(a) except she is limited to occasional climbing of ramps and stairs." (Doc. 5-2, at 16). The ALJ also limited Bonilla to balancing, stooping, kneeling, and crouching only occasionally; never crawling; never having concentrated exposure to extreme temperatures, wetness, fumes, odors, dust, gases, and poor ventilation; never being exposed to unprotected heights or dangerous machinery; performing only routine, repetitive tasks; and only occasional changes

in the work setting. (Doc. 5-2, at 16).

    E.    STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.920(a)(4)(iv). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed it or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform [her] past relevant work despite [her] limitations, [she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)); *see also* 20 C.F.R. § 416.920(a)(4)(iv). Here, the ALJ determined that Bonilla had no past relevant work and thus proceeded to step five of the sequential analysis. (Doc. 5-2, at 21).

    F.    STEP FIVE

At step five of the sequential analysis, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). A claimant who can adjust to other work is not disabled. 20 C.F.R. § 416.920(a)(4)(v). Here, considering Bonilla's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Bonilla could perform. (Doc. 5-2, at 21). In making this determination, the ALJ relied on the vocational expert's testimony that Bonilla was able to perform the requirements of occupations such as a final assembler, order clerk for food and beverage, and

7

carding machine operator, all sedentary occupations with open positions ranging from 20,000 to 83,000 nationally. (Doc. 5-2, at 22). Accordingly, the ALJ determined that Bonilla was not disabled and denied her application for benefits. (Doc. 5-2, at 22).

## IV. DISCUSSION

On appeal, Bonilla submits that the ALJ committed the following errors, each of which warrant remand: (1) he failed to consider how particular mental health issues limit Bonilla's functional capacity; (2) he was obligated, but failed, to include various conditions in Bonilla's collection of severe impairments; and (3) he assigned too much weight to some non-examining physicians. (Doc. 14, at 13-14, 20, 21). The Commissioner responds that the ALJ appropriately evaluated all of the evidence and that substantial evidence supports the decision. (Doc. 15, at 1-2). Additionally, the Commissioner avers that the non-examining physicians' opinions were entitled to the weight they were given. (Doc. 15, at 1-2).

### A. IMPAIRMENTS NOT CONSIDERED SEVERE

Bonilla asserts that she is limited from various impairments which the ALJ did not consider to be severe or were not mentioned in the decision. (Doc. 14, at 19). She avers that her medical records reflect that she suffers from left-sided weakness with left-food drop, right leg issues, vertigo, and asthma. (Doc. 14, at 20). "Claimant's medical records clearly reflect these conditions as having a more than minimal impact upon Claimant's activities of daily living, and as such each of these conditions would have some impact upon Claimant's RFC." (Doc. 14, at 20). It should follow, according to Bonilla, that the ALJ should have classified these conditions as severe and factored them into her RFC. (Doc. 14, at 21). The Commissioner responds that the medical record does not support Bonilla's complaints and alleged limitations. (Doc. 15, at 21). He contends that the evidence cited by Bonilla is contradicted by other evidence in the record, and that her credibility is in doubt. (Doc. 15, at

8

22-23).

As mentioned *supra*, at step two the ALJ is required to consider whether a claimant's impairments are (1) medically determinable and (2) severe. 20 C.F.R. § 416.920 (a)(4)(ii). This severity inquiry is a *de minimis* screening device used to discard meritless claims. *See Newell v. Commissioner of Social Security*, 347 F.3d 541, 546 (3d Cir. 2003); *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360 (3d Cir. 2004). If an ALJ determines that a claimant has a severe condition at step two, then the sequential analysis proceeds to step three. 20 C.F.R. § 416.920 (a)(4)(ii).

Under the regulations, a medically determinable impairment is evaluated as follows:

> Your [medically determinable] impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).

20 C.F.R. § 416.921.

Further, to qualify as "severe," the impairment, or combination of impairments, must "significantly limit[ ] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(c). According to SSR 85-28, examples of basic work activities include:

> [W]alking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting.

SSR 85-28, 1985 WL 56856 (Jan. 1, 1985).

An impairment is not considered severe, however, if it only presents a "slight abnormality" that has "no more than a minimal effect on [a claimant's] ability to work." *Newell*, 347 F.3d at 546.

The burden of showing the severity of an impairment at step two rests with a claimant. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). This burden is "not an exacting one," and "[a]ny doubt as to whether a showing has been made is to be resolved in favor of the applicant." *McCrea*, 370 F.3d at 360. Accordingly, the Third Circuit has held that "[t]his step should be 'rarely utilized' to deny benefits." *Kinney v. Comm'r of Soc. Sec.*, 244 F. App'x 467, 469 (3d Cir. 2007) (citing *McCrea*, 370 F.3d at 361). "Due to this limited function, the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." *McCrea*, 370 F.3d at 360.

First, Bonilla claims that her left-sided weakness with left-foot drop has been ongoing since 2015 and is confirmed by her medical records. In support of this claim, Bonilla cites not to a medical record, but to the transcript of her oral hearing. (Doc. 14, at 20) (citing Doc. 5-5, at 53). The law is clear that "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." 20 C.F.R. § 416.921. Therefore, Bonilla's testimony is insufficient, by itself, to establish a physical or mental impairment. As for the remaining conditions which Bonilla argues should be considered severe, Bonilla identifies no medical documentation in support of her averments. (Doc. 14, at 19-21). Plaintiff's failure to identify support in the medical record results in a failure to carry her burden. *See Gonzalez v. Saul*, 2020 WL 5074326, at *12 (M.D. Pa. 2020). The ALJ's decision shall not be reversed on this issue.

B.   LIMITATIONS NOT IN THE RFC

Bonilla next asserts that the ALJ failed to include in the RFC particular limitations caused by her severe impairments. (Doc. 14, at 11-18).

10

### 1. Mental Health Limitations

First, Bonilla identifies panic attacks, depression, and neurological issues, all of which give rise to particular work challenges. (Doc. 14, at 13-14). The panic attacks worsen with the stress of work and can force her to leave work early or not be able to work at all. (Doc. 14, at 13-14). Bonilla's "neurological issues" affect her concentration and focus, her ability to remain on task, give her insomnia, and cause nervous and anxious behavior. (Doc. 14, at 13-14). These issues' effects on Bonilla's "ability to remain on task, need for unscheduled breaks, and absenteeism," were not addressed by the ALJ, and the RFC is insufficient to handle these limitations. (Doc. 14, at 14-15). The Commissioner responds that the ALJ "properly discredited [the] dubious allegations" regarding these perceived limitations. (Doc. 15, at 19). He submits that Bonilla does not present evidence that these limitations exist and that they satisfy the 12-month durational requirement. (Doc. 15, at 20-21).

The ALJ's failure to address substantial evidence that Bonilla is limited by the effects of her depression and anxiety, particularly the symptoms of fatigue and insomnia, is cause for remand. Bonilla identifies substantial evidence in the medical record corroborating her allegations of sleep disturbance, nervousness, anxiety, insomnia, panic attacks, and depression. (Doc. 5-5, at 13, 18; Doc. 5-13, at 64; Doc. 5-19, at 56-61). On October 12, 2015, the Medication Management Assessment provided by Cindy Wolf, CRNP, reflected that Bonilla had been diagnosed with major depressive disorder, generalized anxiety disorder, and primary insomnia. (Doc. 5-13, at 64). Symptoms included changes in mood and loss of interest in activities. (Doc. 5-13, at 64). The mental status exam revealed depression, anxiety, and insomnia. (Doc. 5-13, at 65). Nearly four months later, on February 5, 2016, Bonilla reported her depression and anxiety as 10 out of 10. (Doc. 5-19, at 58). She also stated that

11

she was having panic attacks daily. (Doc. 5-19, at 58). Her therapist at this time reported that Bonilla suffered from, *inter alia,* sleep disturbance, fatigue, loss of interest, issues concentrating, and panic attacks. (Doc. 5-19, at 60). Her social environment and "occupational problem" are described as psychosocial stressors. (Doc. 5-19, at 60). Approximately two years later, on December 3, 2018, Bonilla reported to Dr. Robert Knipe that she experienced dysphoric mood, sleep disturbance, nervousness, and anxiousness. (Doc. 5-5, at 18). She reported the same on December 13, 2018. (Doc. 5-5, at 13).

Throughout his decision, the ALJ recognizes the presence of these issues but fails to adequately address them. He opines that "the claimant has depression and anxiety based on records from Philhaven Lebanon, a treating mental health provider," and that "Ms. Miller noted that the claimant has frequent crying, sleep disturbance, decrease in appetite, fatigue, loss of interest, concentration issues, and panic attacks." (Doc. 5-2, at 18). The ALJ also acknowledges Bonilla's oral testimony that she stopped working at Boscov's due to fatigue. (Doc. 5-2, at 19). Despite the ALJ's acknowledgment that Bonilla's mental health provider had described her struggle with depression and anxiety leading to insomnia and fatigue,[2] he goes on to state that "the treatment record does not support or provide a basis for [her inability to work due to fatigue]," and "the record does not provide a medical or psychological basis for missing work."[3] (Doc. 5-2, at 18-19). This conclusion is clearly belied by the Philhaven

---

[2] Fatigue and sleep problems are frequent symptoms of depression. Rachel Nall, MSN, CRNA, *Fatigue and Depression: Are They Connected?,* Healthline (last updated Mar. 29, 2020) https://www.healthline.com/health/depression/fatigue.

[3] The ALJ's conclusion that "the claimant's ability to care for her four children is inconsistent with her testimony of migraines, seizures, fatigue, etc." is flawed. (Doc. 5-2, at 19). Individuals frequently care for children while experiencing such ailments.

Furthermore, insofar as the ALJ uses Bonilla's boyfriend's testimony "that the claimant was terminated by Boscov's because she missed too much work and had to care for

Lebanon records and Ms. Miller's notes, which the ALJ had previously mentioned. (Doc. 5-2, at 18).

The ALJ identifies substantial evidence that Bonilla has normal memory, comprehension, mood, affect, and behavior despite her depression and anxiety, however he does not address how the depression and anxiety affect her ability to remain on task and work without unscheduled breaks or absenteeism. (Doc. 5-2, at 17, 19-20). The only instance in which the ALJ touches upon Bonilla's fatigue and its effect on her ability to work a regular schedule is when he assigns significant weight to the assessment of Alex Siegel, Ph.D., a non-examining DDS psychologist. (Doc. 5-2, at 20). That assessment includes the opinion that Bonilla is "not significantly limited" in her "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." (Doc. 5-6, at 12). However, Siegal does not say how he came to this opinion and the ALJ does not justify his reliance on this portion of Siegel's assessment with medical evidence. (Doc. 5-2, at 20; Doc. 5-6, at 12-13).

In sum, the ALJ found that Bonilla suffers from depression and anxiety and wrote that her treating mental health provider noted that she has sleep disturbance, fatigue, concentration issues, and panic attacks. (Doc. 5-2, at 18). Bonilla testified to frequently suffering from fatigue and that her chronic night sweats frequently wake her up at night. (Doc. 5-5, at 50-51). The ALJ acknowledged that Bonilla was unable to work full time at Boscov's due to fatigue but did not account for the effects of fatigue in the RFC. (Doc. 5-2, at 16, 19).

---

her four young children," to contradict Bonilla's testimony that she stopped work due to fatigue, the ALJ errs. (Doc. 5-2, at 19). It stands to reason that an individual who suffers from fatigue would miss too much work and would be unable to balance work with raising children. See *Zirnsak v. Colvin*, 777 F.3d 607, 612-13 (3d Cir. 2014) ("An ALJ cannot reject evidence for an incorrect or unsupported reason.").

In light of the above, his statement that "the record does not provide a medical or psychological basis for missing work," is severely flawed. (Doc. 5-2, at 19). No valid reason is provided for discounting the effect of fatigue and sleep disturbances on Bonilla's ability to work or for concluding that Bonilla can work a full and uninterrupted schedule despite suffering from fatigue and insomnia. (Doc. 5-2, at 19; Doc. 5-5, at 50-51). The ALJ may not reject evidence for no reason or for the wrong reason, thus remand is necessary to resolve this issue. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).

Because the Court recommends vacatur of the ALJ's decision based on the failure to account for limitations to Bonilla's work schedule, it declines to address Bonilla's remaining allegations of error, as "[a] remand may produce different results on these claims, making discussion of them moot." *Burns v. Colvin*, 156 F. Supp. 3d 579, 598 (M.D. Pa. 2016).

## V. CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Commissioner's decision to deny Plaintiff's application for benefits be **VACATED** and the case be **REMANDED** for further proceedings consistent with this order. Final judgment be issued in favor of Plaintiff, and the Clerk of Court close this case.

An appropriate Order follows.

Dated: February 25, 2021                            *s/ Karoline Mehalchick*
                                                    **KAROLINE MEHALCHICK**
                                                    **United States Magistrate Judge**

Case 3:20-cv-00161-KM Document 16 Filed 02/25/21 Page 15 of 15